JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7076 | **DATE** | 7/17/2003 |
| **CASE TITLE** | | Lynch vs. Sternes | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The Court concludes that petitioner is not entitled to habeas relief. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUL 21 2003 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | |
| X | Mail AO 450 form. Mailed by MD. | | | |
| | Copy to judge/magistrate judge. | | 7/17/2003 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JUL 2 1 2003

**United States of America**
**ex rel. ANTHONY LYNCH (#B-64680),**

      **Petitioner,**

      v.

**JERRY STERNES,**
**Warden,**
**Dixon Correctional Center,**

      **Respondent.**

No. 00 C 7076
Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Anthony Lynch ("Lynch") challenges his conviction for first-degree murder entered in the Circuit Court of Cook County, Illinois. Lynch raises the following claims in his federal habeas petition: (1) he was denied his right to a public trial as guaranteed by the Sixth Amendment; (2) he was denied his right to a fair trial based on *Brady v. Maryland*, 373 U.S. 83 (1963); and (3) the State's failure to disclose the alleged *Brady* evidence affected his decision to waive his constitutional right to a jury trial.

### I. HABEAS STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), this court must deny Lynch's petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *Price v. Vincent*, __ U.S. __, 123 S. Ct. 1848, 1852 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

33

question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405.

A state court's decision is an unreasonable application of clearly established Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams* v. *Taylor*, 529 U.S. 362, 405 (2000). In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz* v. *Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

## II. BACKGROUND

### A. PROCEDURAL HISTORY

After a bench trial, the Circuit Court of Cook County found Lynch guilty of first degree murder and sentenced him to forty years' imprisonment. On January 28, 1997, the Illinois Appellate Court affirmed the Circuit Court's judgment on direct appeal. The Illinois Supreme Court denied Lynch's petition for leave to appeal on June 4, 1997.

On January 30, 1998, the Circuit Court denied Lynch's post-conviction petition. The Illinois Appellate Court affirmed the trial court's judgment on November 2, 1999. On April 5, 2000, the Illinois Supreme Court denied Lynch's petition for leave to appeal. Because Lynch filed his habeas petition within one year after the conclusion of his Illinois post-conviction proceedings, this court has jurisdiction to consider Lynch's habeas petition. *See* U.S.C. § 2244(d)(1)(A); *Gray* v. *Briley*, 305 F.3d 777, 778-79 (7th Cir. 2002).

## B. FACTS

When considering a habeas petition, the court must presume that the state courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Lynch has not presented clear and convincing evidence to rebut this presumption. Therefore, the court adopts the Illinois Appellate Court's recitation of the facts in *People v. Lynch*, No. 95-1251, slip op., at 1-10 (1st Dist. 1996) (unpublished order) (*Lynch I*) (Resp. Ex. A) and *People v. Lynch*, No. 98-0760, slip op., at 1-4 (1st Dist. 1999) (unpublished order) (*Lynch II*) (Pet. Ex. 3). Moreover, where necessary, the court refers to the trial transcripts from the state court record.[1]

On November 14, 1994, the State proceeded with its case against Lynch for first-degree murder of Willie Robinson ("Robinson"). (Trial Tr., vol. i, Nov. 14, 1994 at 6.) Because Lynch waived his right to a jury trial, the court held a bench trial. (*Id.* at 6-9.)

Lynch testified that on March 27, 1993, he got off from working at two bars around 4:30 a.m. after which he went to four other bars before 10:00 a.m. At the last bar, Lynch offered to drive three individuals, John Koranda ("Koranda"), Henry Knackstedt ("Knackstedt") and David Strickland ("Strickland") to another bar. While driving, he was speeding and weaving because he was drunk and tired. Although he saw the victim, Robinson, walking in the street around a parked car, he nonetheless hit Robinson with his car. After hitting Robinson, Lynch testified that everyone in the car panicked. Lynch then continued to drive at about 45 miles per hour in a 25-mile zone even though he heard Robinson's body thumping against the underside of the car. He let his passengers out of his car a few blocks later and then called a friend. The next day, he cleaned his car thoroughly, including the undercarriage. Neither Lynch nor any of his passengers reported the accident.

---

[1] On December 16, 2002, the court granted Lynch's *pro se* motion to rely on the state court record, stating it would examine the record as it deems necessary in order to reach its decision in the case.

3

Koranda testified for Lynch that he saw Robinson for 5 to 10 seconds before impact. Robinson ran from near the curb to the middle of the street to avoid Lynch's car. Lynch then sped up after impact, dragging Robinson for several seconds.

Knackstedt also testified. Although Knackstedt said Robinson fell down in front of the car (and thus was not on the hood), he admitted that he ducked down in his seat to avoid seeing Robinson after impact. He denied telling the police that Robinson was on the sidewalk when Lynch started driving in his direction.

Police Detective Ronald Mersch ("Detective Mersch"), however, testified that Knackstedt told him that Lynch steered his car towards Robinson while Robinson walked on the sidewalk.

Strickland testified as a witness for the State. Lynch ran red lights while speeding and weaving on the streets. Lynch swerved toward several people he saw walking in the street. Once Lynch aimed his car at a pedestrian, he said, "Watch me make him run." Strickland testified that once Lynch saw Robinson, he aimed the car at him and sped up. Once Robinson saw Lynch's car aimed at him, he backed up a few steps and grabbed the fence on the sidewalk. As Lynch's car continued to approach him, he then ran into the street. Lynch then swerved his car back into the street, hitting Robinson. After impact, Robinson landed on the hood of the car and Lynch began to zigzag the car until Robinson fell off. According to Strickland, when Robinson slid off the car hood, Lynch sped up rapidly and drove over Robinson. The passengers all panicked, but Lynch said, "Calm down, just relax." When he let the passengers out of the car, Lynch said, "Nothing happened, just forget about it."

Strickland admitted that he was on probation for possession of narcotics and that he faced a pending misdemeanor charge. The State, however, chose not to prosecute another possession charge. Moreover, on redirect examination, Strickland testified that the State did not make any

promises or agreements with him in exchange for his testimony. (Trial Tr., vol. ii, Nov. 14, 1994 at 171-72.)[2]

L.C. Mann ("Mann") also testified for the prosecution. He contradicted himself at several points but part of his testimony corroborated Strickland's account. Mann testified that he stepped out of the workplace around 10:30 a.m. on March 27, 1993 and watched his friend, Robinson, walking on the sidewalk. He watched Robinson for approximately 10 minutes. He saw Lynch's car swerve towards Robinson, causing Robinson to run against the fence. The car hit the fence and then Mann saw Robinson holding onto the hood of the car. The car sped up.[3] At some point, the car slowed its speed and Robinson slid off it. The car then ran over Robinson and dragged him.

Moreover, a police officer who first arrived at the scene testified that he noticed zigzagging tire tracks on the street. He found Robinson's hat about 40 feet down the street from the start of the tracks. The body came to rest about 250 feet further down the street from the hat. The police also found on Robinson's shoes paint similar to the paint on the hood of Lynch's car.

Larry Storts ("Storts"), another witness for the State, testified that he met Lynch at the Cook County Jail in 1994 while both men were incarcerated. Lynch told Storts that on the day he

---

[2] On January 22, 2002, the court granted Lynch's motion to expand the record. *See* Rule 7 (expansion of the record) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254; *Boyko v. Parker*, 259 F.3d 781, 789-90 (7th Cir. 2001). The evidence Lynch purports to offer is that Strickland received a $250 fine and supervision for driving with a revoked license in Williamson County on October 19, 1994 at 9:30 a.m. (the "Williamson County charges") and, according to a bond recognizance sheet, was released on bond for an aggravated driving under the influence ("DUI") charge on that same day at 6:00 p.m. (the "Cook County charges"). Based on this evidence, Lynch speculates how Strickland could be in Williamson County at 9:30 a.m. on October 19 but then in Cook County on that same day without assistance from the State. The evidence, however, does not demonstrate that Strickland actually was in court in Williamson County on October 19 nor does it show when Strickland was arrested for the aggravated DUI and that he was in jail on October 19 for that charge.

Alternatively, Lynch asserts that the State misrepresented to his defense counsel that the Williamson County charges were pending when, in fact, the charges had been resolved. Furthermore, Lynch questions how Strickland could receive only a $250 fine and supervision given that he did not appear in court on the Williamson County charges and based on his past driving record. As noted *infra* Part B, Lynch argues that the State withheld evidence of Strickland's criminal background and that this impeachment evidence was crucial to his defense as well as that the State introduced perjured testimony and allowed that testimony to go uncorrected. Thus, the court includes this evidence as part of those arguments.

[3] Mann conflicted his testimony on direct and cross examination concerning the direction of the car. On direct examination, Mann said the car went straight. On cross examination, he said the car swerved from side to side as though Lynch was trying to throw Robinson off the car.

hit Robinson he said to himself "ten points" and "got that nigger." Storts admitted that he hoped for leniency on pending burglary charges because of his testimony, but the State had not agreed to any specific deal in exchange for his testimony. Moreover, he knew he could face substantial time because he already had four burglary convictions and one conviction for attempted burglary.

Steve Wilcox ("Wilcox") then testified. He knew Storts from his neighborhood. In June 1994, Storts told Wilcox that he was going to make up a story against Lynch to try to get himself a lighter sentence.

At sentencing, a number of defense witnesses testified in mitigation. They testified that Lynch had the potential for rehabilitation and that he was well-behaved when he did not drink too much. The State presented evidence of Lynch's criminal history and also presented a witness who testified that Lynch had sexually assaulted her. Shortly after she began testifying, the prosecutor asked the court to exclude the defense's rebuttal witnesses concerning the sexual assault. The court then asked defense counsel to identify those witnesses. After defense counsel was uncooperative and failed to identify the witnesses, the court cleared all spectators from the courtroom, indicating that some of them were not behaving properly. Defense counsel objected to the trial court's decision as a violation of Lynch's right to a public trial. After the witness testified, the court reopened the courtroom.

After Lynch raised the courtroom's closure as grounds for a new sentencing hearing, the judge explained that he had closed the courtroom because defense counsel had been uncooperative and failed to identify the rebuttal witnesses. The court also added that many of the spectators were hostile to the prosecution's sentencing witness and that he had considered holding defense counsel in contempt but rejected that alternative. The judge explained that, by clearing the courtroom, he could achieve the objectives of preventing the spectators from rallying behind defense counsel and protecting the witness by allowing her to testify in a less hostile atmosphere. The trial judge stated that the victim would have to recall the details of a traumatic incident and that he "didn't want her to go through that again in front of this group of people who

had through the entire trial been rallying behind the cause of the defendant." The court then denied Lynch's motion to reconsider the sentence.

### III.  DISCUSSION

#### A.  Claim (1): right to a public trial

Lynch claims that he was denied his Sixth Amendment right to a public trial because the trial court excluded all spectators from the courtroom during the State's presentation of an aggravation witness at sentencing. Because Lynch fairly presented this claim on direct appeal to the state courts, the court considers it on the merits.

Although the Sixth Amendment provides that criminal defendants have the right to a public trial, that right is balanced against other rights and interests. *See Waller v. Georgia*, 467 U.S. 39, 45 (1984). In *Waller*, the United States Supreme Court considered the total closure of a courtroom in the context of a seven-day suppression hearing and formulated a test for determining when a criminal defendant's right to a public trial is outweighed by other considerations. *See id.* at 44-48. For instance, one of these considerations is the State's interest in preventing disclosure of sensitive information. *See id.* at 45. The *Waller* test includes the following factors: (1) absent the closure, the overriding interest (of the trial court) is likely to be prejudiced; (2) the closure cannot be broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make factual findings adequate to support the closure. *Id.* at 48.

In his habeas petition and accompanying argument, Lynch does not, as required under § 2254(d)(1), articulate whether the Illinois Appellate Court's decision was "contrary to" or "an unreasonable application" of clearly established Supreme Court precedent. In fact, Lynch does not address the Illinois Appellate Court's decision in his opening brief; yet under the AEDPA, this court reviews the decision of the last state court to consider the merits of a claim – in this

case the Illinois Appellate Court on direct appeal.[4] *See Schultz*, 313 F.3d at 1015. Although it is not the court's duty to construct a litigant's legal arguments, especially when the party is represented by counsel, *see Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996), based on Lynch's argument that "the trial court could not, and did not, cite a specific factual basis for its order, and, instead, relied on a generalized concern about a hypothetical possibility," it appears that Lynch is arguing that the Illinois Appellate Court's decision was an unreasonable application of the fourth *Waller* criterion. (Pet. at 34 ¶ 8.) Accordingly, the court turns to the Illinois Appellate Court's decision to determine whether it was an unreasonable application of *Waller*, the governing Supreme Court precedent under these circumstances. *See, e.g., Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000).

Following the guidelines in *People v. Webb*, 267 Ill. App. 3d 954, 957-58 (1st Dist. 1994), which employs the *Waller* framework,[5] the court concluded that the trial court properly found an overriding interest in protecting the sentencing witness during her testimony about the alleged sexual assault. Relying on Illinois case law, the Illinois Appellate Court noted that preventing the unnecessary pressures or embarrassment of a witness is an interest sufficient to justify a limited closure of the courtroom. *See People v. Latimore*, 33 Ill. App. 3d 812, 818-19, 342 N.E.2d 209, 214-19 (5th Dist. 1975) (partial closure of courtroom during victim's testimony of sexual assault did not violate the defendant's right to public trial). The Illinois Appellate Court further explained:

> The judge here initially sought to exclude only defense witnesses who would testify concerning the sexual abuse charge. When the court ordered defense counsel to identify his witnesses, counsel failed to make the required identification and instead continued to argue the ruling. The judge later explained

---

[4] In his reply memorandum, Lynch claims that the Illinois Appellate Court's decision was "contrary to established constitutional principles[,]" which appears to be a challenge based on the "contrary to" prong of the AEDPA. *See* § 2254(d)(1) ("contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States"). Because this argument was raised for the first time in Lynch's reply brief, it is waived. *See Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002).

[5] Under the AEDPA, the Illinois Appellate Court was not required to cite *Waller* so long as its reasoning or result did not contradict clearly established Supreme Court precedent. *See Early v. Packer*, 537 U.S. 3, 123 S. Ct. 362, 365 (2002).

8

that at that point he felt the spectators, who were largely supporting defendant, were becoming unruly, and the witness would face a more openly hostile audience for her difficult testimony. The judge considered the alternative of holding defense in contempt, but that might have further provoked the spectators and made the courtroom yet more hostile for the witness.

While we did not see the spectators and we cannot judge whether they were becoming unruly, we note that at several times during the trial the court needed to reprimand the spectators for their comments. The record indicates that the spectators showed hostility to some prosecution witnesses. The judge gave defense counsel ample opportunity to identify his witnesses so the court could limit the persons excluded. Defense counsel failed to meet its [*sic*] burden of supplying the ordered identifications. . . . The court then cleared out all spectators, which included no persons from news media, and allowed all spectators to return when that single witness completed her testimony. The court expressly considered alternatives and made explicit findings in support of the closure. Under the specific circumstances of this case, where an uncooperative attorney provoked hostile spectators just when the prosecution had put on the stand a witness who intended to present especially traumatic testimony concerning a sexual assault, we hold that the trial court's finding adequately supports the limited closure of the courtroom. . . .

*Lynch I* at 18-19 (internal citations omitted).

In sum, the Illinois Appellate Court held, and this court agrees, that the trial court's findings were adequate based on a hostile and unruly audience, an uncooperative defense attorney who possibly provoked the hostile spectators, and the witness's sensitive testimony about the alleged sexual assault. Not only was the trial court's factual basis adequate, the interests balanced against Lynch's right to a public trial were legitimate. Indeed, the interest of preventing the disclosure of sensitive testimony is articulated in the *Waller* opinion itself. 467 U.S. at 45 (balancing interests include inhibiting the disclosure of sensitive information). Moreover, the hostility of the spectators in the courtroom is a legitimate safety concern which courts must consider. *See United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997) (judges confronted with potential disruption must consider the security of the courtroom). Accordingly, the court concludes that the Illinois Appellate Court's decision was consistent with the facts and circumstances of the case, and therefore, a reasonable application of the controlling legal framework under *Waller*. *See Schultz*, 313 F.3d at 1015.

9

In any event, even if a constitutional violation occurred, the specific remedy in *Waller* was not a new trial, but a new public suppression hearing. 467 U.S. at 50. The Court in *Waller* concluded that if the public suppression hearing resulted in a material change in the positions of the parties, then a new trial would cure the constitutional wrong. *See id.* Applying that reasoning here, the remedy for Lynch is the sentencing witness's repeated testimony in open court. *Cf. Lawrence v. Nelson*, No. 97 C 2678, 1999 WL 608770, at *4 (N.D. Ill. Aug. 6, 1999) (appropriate remedy under *Waller* involved repetition of the government's rebuttal argument, not a new trial). Because Lynch's case was a bench trial, the reiteration of the witness's testimony to the trial court in the presence of spectators would not result in a material change to the parties. *See id.* Consequently, even under the *Waller* framework, Lynch is not entitled to a new trial. Thus, the court denies claim (1) on the merits.

**B.    Claim (2): *Brady* violations**

Lynch's next claim is that he was denied his right to a fair trial because the State suppressed evidence that was favorable to him in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, Lynch argues that the State failed to tender all of the requested impeachment evidence concerning prosecution witnesses Strickland and Storts. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (extending *Brady* framework to favorable impeachment evidence). Moreover, Lynch argues that the State introduced perjured testimony and allowed such testimony to go uncorrected. Because Lynch fairly presented this claim on post-conviction review to the state courts, the court reviews the claim on the merits.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." 373 U.S. at 87. In order to establish a *Brady* violation, Lynch must show that (1) the prosecution suppressed impeachment evidence; (2) the evidence was favorable to his defense; and (3) the evidence was material to his case. *See Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002), citing *Brady*, 373

U.S. at 87. Evidence is "material" under *Brady* if, had it been disclosed, the evidence creates a reasonable probability that the result of the entire proceeding would have been different. *See Strickler v. Greene*, 527 U.S. 263, 289-90 (1999); *Pecoraro v. Walls*, 286 F.3d 439, 443 (7th Cir. 2002).

In its decision, the Illinois Appellate Court correctly identified the controlling legal principles under *Brady* and its progeny, as well Illinois cases adopting the *Brady* framework. *See Pecoraro*, 286 F.3d at 443 ("The *Brady* doctrine is of course clearly established law determined by the Supreme Court"). Therefore, this court need not address whether the Illinois Supreme Court's decision was "contrary to" clearly established Supreme Court precedent, but addresses whether the Illinois Appellate Court's decision was an unreasonable application of *Brady*. *See* § 2254(d)(1); *Williams*, 529 U.S. at 407.

*I.    Strickland*

Lynch argues that the State withheld evidence of Strickland's criminal background and that this impeachment evidence was crucial to his defense due in part to Strickland's signed police statements conflicting with his trial testimony.[6] In the post-conviction appellate decision, the Illinois Appellate Court articulated its reasons for rejecting Lynch's *Brady* claim concerning Strickland's criminal history:

> In summary, Strickland testified regarding several of his criminal violations during both cross- and redirect examinations. On direct appeal, we determined that the prosecution's failure to inform defense counsel that Strickland

---

[6] On cross examination, Strickland testified that, when he originally spoke with Detective Mersch, he did not tell Mersch that he saw Robinson grab the fence, run away from the car, go onto the hood of the car, that Lynch zigzagged his car with Robinson on the hood, or that he heard the sound of Robinson's body under the car. Rather, he told Detective Mersch that he did not see Lynch hit Robinson and that the car felt like it hit a speed bump. Detective Mersch typed up what Strickland said to him and Strickland signed the statement.

The prosecutor objected to the defense counsel's questions about Strickland's statements to Detective Mersch, but the trial court overruled this objection. On redirect examination, the prosecutor tried to rehabilitate Strickland. Defense counsel objected and the trial court sustained the objection, explaining that the defense counsel's impeachment by omission was ineffective because the court would not expect Strickland to offer facts not requested by the police. The court determined that Strickland's statements were not inconsistent and refused to consider the signed statement as substantive evidence.

11

> had an arrest for driving while intoxicated would not have affected the outcome of
> defendant's case. In our determinations, "substantial evidence corroborated all
> significant details of Strickland's testimony." In addition to Strickland's
> testimony, the trial court heard the testimony of Korunda and L.C. Mann
> concerning defendant's conduct. More importantly, the physical evidence of
> zigzagging tire tracks and paint on the victim's shoes corroborated Strickland's
> testimony that defendant aimed his car at the victim while traveling at a high rate
> of speed, hit him, swerved to get the victim off the car, then drove over him.
> Therefore, even if defendant's allegations against the State were valid, we find
> there is no reasonable probability that presenting additional impeachment to the
> trial court regarding Strickland's criminal history would have been material to the
> determination of defendant's guilt or innocence.

*Lynch II* at 11-12 (internal citations omitted).

This court concludes that the Illinois Appellate Court reasonably applied the materiality test as enunciated in *Brady* and its progeny to the facts at hand. *See Strickler*, 527 U.S. at 289-90 (*Brady* evidence is material if it creates a reasonable probability that result of the trial would have been different). The Illinois Appellate Court discussed Strickland's testimony regarding several of his criminal offenses and outlined evidence of other witnesses who corroborated Strickland's trial testimony. Further, the Illinois Appellate Court discussed the physical evidence corroborating Strickland's testimony that Lynch "aimed his car at the victim while traveling at a high rate of speed, hit him, swerved to get the victim off the car, then drove over him." Based on this trial evidence, the Illinois Appellate Court concluded that the additional impeachment evidence regarding Strickland's criminal history would not have affected the outcome of the case. *See Giglio*, 405 U.S. at 154 (witness's credibility must be determinative of guilt or innocence for impeachment evidence to be material). Consequently, this court concludes that the Illinois Appellate Court based its decision on the facts and circumstances of this case, and thus, reasonably applied *Brady* to this claim.

2. *Storts*

Lynch argues that additional impeachment evidence concerning the State's witness Storts was improperly withheld. This alleged *Brady* evidence included the fact that Storts received the "substantial benefit" of being held in witness quarters rather than in the general jail population. Lynch contends that this evidence would have been used to attack Storts' credibility and to

12

support the argument that Storts had made a deal with the prosecution before he testified. In his post-conviction appellate brief to the Illinois Appellate Court, Lynch argued that other *Brady* material was withheld including evidence of Storts' drug abuse and the State's failure to pursue other cases against Storts. Lynch, however, does not make these additional arguments here. Therefore, this court need only review the Illinois Appellate Court's decision regarding the alleged suppression of Storts' "substantial benefit" implication that Storts had a deal with the prosecution.

When addressing Lynch's *Brady* claim regarding Storts, the Illinois Appellate Court explained:

> Defendant offers no support for his claim that being held in the witness quarters was a substantial benefit. Also, defense counsel was well aware of Storts' drug use, where Storts admitted on cross-examination that he considered himself an addict. Finally, defendant has not shown that additional information regarding possible criminal charges against Storts would have affected the trial court's assessment of his credibility.
>
> Storts testified that at the time of defendant's trial, he was serving two prison sentences and had two residential burglary charges and an escape charge pending against him. Storts stated that he would likely receive substantial sentences on the pending charges, and hoped that he would receive leniency because of his testimony in defendant's case even though none had been offered. Defense witness Steven Wilcox testified that Storts said he was going to make up a story against defendant to try to get a lighter sentence. The trial court was apprised of Storts' extensive criminal history and heard evidence showing that he was testifying with the hope of obtaining leniency. It is unlikely that the alleged discovery violations raised by defendant would have affected the trial court's assessment of Storts' credibility. Therefore, they were not material.

*Lynch II* at 12-13.

Clearly, the Illinois Appellate Court's decision was consistent with the facts of this case, and thus, not an unreasonable application of *Brady*. After reviewing the cumulative nature of the impeachment evidence, Lynch's failure to establish that Storts' custody was a "substantial benefit," and Storts' own testimony concerning his hope of obtaining leniency, the Illinois Appellate Court concluded that the impeachment evidence regarding Storts' custody and the inference of a deal with the prosecution as well as his additional criminal charges would not have affected the trial court's assessment of Storts' credibility. Thus, that evidence was not material.

13

Furthermore, Lynch's argument that this information might have helped his defense does not make this evidence material. *See United States* v. *Agurs*, 427 U.S. 97, 109-110 (1976) (mere possibility that undisclosed item may help defense does not establish materiality in the constitutional sense). Rather, Lynch must show that this additional information would put his entire case in such a different light as to undermine confidence in the outcome. *See Strickler*, 527 U.S. at 290. He has failed to do this. Thus, the Illinois Appellate Court's decision was neither contrary to nor an unreasonable application of *Brady* and its progeny.

3. *Perjured testimony*

Lynch contends that there is evidence that the State introduced false testimony and allowed unsolicited false testimony to go uncorrected. In order to establish a due process violation, a habeas petitioner seeking a new trial on the ground that the prosecutor used perjured testimony must establish that: (1) the prosecution presented perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) that there is a likelihood that the perjured testimony impacted the verdict. *See Harding* v. *Walls*, 300 F.3d 824, 828 (7th Cir. 2002).

Relying on Illinois cases explicitly adopting United States Supreme Court precedent, the Illinois Appellate Court concluded that based on Lynch's failure to support his allegations of false testimony with the record, his due process rights were not violated. *See, e.g., People* v. *Olinger*, 176 Ill. 2d 326, 345, 680 N.E.2d 321, 331 (1997), citing *United States* v. *Bagley*, 473 U.S. 667, 678-80 (1985).[7] The Illinois Appellate Court explained:

> Defendant also claimed that the prosecutor failed to correct Strickland's alleged perjury regarding his criminal history. He argues that Strickland falsely answered that he had not been in court for several months on any charge when he had in fact been in court in the same courthouse one week earlier on a felony charge of driving while intoxicated, which had been dismissed. Defendant also

---

[7]In his reply brief, Lynch raises issues concerning the alleged perjured testimony of Storts. Not only was this argument raised for the first time in his reply brief and therefore waived, *see Fenster*, 301 F.3d at 859, but Lynch did not raise this argument in his petition for leave to appeal to the Illinois Supreme Court. Hence, any such claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 844-45.

14

> claims Strickland falsely stated that he had no violations pending against him
> when there was a pending violation of his conditional discharge.
>
> * * *
>
> Defendant's assertion that Strickland falsely testified about the last time he
> was in the Maywood courthouse misconstrues the record. Strickland responded to
> defense counsel's offense-specific questions in the context of cross-examination.
> Defendant does not indicate how the answers elicited from Strickland were false,
> nor does he support his allegation that the State knew this testimony to be
> perjurious.
>
> With respect to the pending violation, Strickland admitted during cross-
> examination that he was on probation for possession of narcotics, faced a pending
> misdemeanor charge, and that the State chose not to prosecute another possession
> charge. However, defense counsel previously informed the court of Strickland's
> pending misdemeanor and that it would constitute a violation of his probation,
> failed to object when the allegedly perjurious statement was made during redirect
> examination and did not inquire as to this statement on recross-examination.
> Defendant's allegations regarding false testimony are not supported by the record.

*Lynch II* at 9-11 (internal citations omitted).

Here, the Illinois Appellate Court concluded that Lynch's allegations of perjured testimony were not supported by the record. In other words, Lynch did not fulfill the requirement of establishing that there was perjured testimony in the first instance.[8] Therefore, this court cannot conclude that the Illinois Appellate Court's decision was contrary to or involved an unreasonable application of *Brady*, *Bagley*, and their progeny.[9] Accordingly, Lynch's habeas claim based on the alleged perjured testimony must fail.

### C.   Claim (3): jury waiver

Last, Lynch claims that he made an uninformed waiver of his constitutional right to a jury trial because the State disclosed incomplete information prior to trial. Specifically, Lynch asserts that once he discovered the alleged *Brady* material, *i.e.*, the additional impeachment evidence pertaining to prosecution witnesses Strickland and Storts, he filed his post-conviction petition.

---

[8] The same reasoning applies to Lynch's new evidence that Strickland purportedly received a favorable disposition on the Williamson County charges. *See* discussion *supra* note 2.

[9] The *Brady* doctrine is rooted in a series of cases concerning convictions based on the prosecution's knowing use of perjured testimony. *See Bagley*, 473 U.S. at 679 n.8.

Lynch argues that had he known of this additional impeachment evidence he would not have waived his right to a jury trial. In response, the State argues that, because Lynch did not raise this argument as a constitutional claim before the Illinois Appellate Court, he did not fully and fairly present this claim, and thus, it is procedurally defaulted.

Before a federal habeas court may consider a constitutional claim, the habeas petitioner must establish that he has "fully and fairly" presented his constitutional claim to the state courts. *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). A full and fair presentment requires that the petitioner present both the operative facts and controlling legal principles to the state court – a mere reference to a constitutional issue is not enough. *See Chambers,* 264 F.3d at 737-38. If a habeas claim is not fully and fairly presented to the state courts, federal courts are procedurally barred from collaterally reviewing the claim. *Id.* at 737.

Factors relevant to whether a petitioner has fully and fairly presented a claim to the state courts include whether the petitioner's state court argument: (1) relied on federal cases that engage in a constitutional analysis; (2) relied on state cases that apply a constitutional analysis to similar facts; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). The presence of any of the above factors does not automatically avoid procedural default. *See Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996). Instead, a habeas court must carefully consider the specific facts of the case. *See id.*

In his brief to the Illinois Appellate Court on post-conviction review, Lynch argued that the additional impeachment evidence would have been of critical importance to his decision to waive his right to a jury trial. (Resp't Ex. D at 24-26.) Lynch, however, did not explain to the Illinois Appellate Court how this additional impeachment evidence would have been of critical importance. In fact, he gave no other factual basis supporting this claim. Thus, Lynch failed to

present the operative facts relative to a constitutional jury waiver claim. *See Chambers*, 264 F.3d at 737-38.

Furthermore, the bulk of Lynch's argument relied on *People v. Aguilar*, 218 Ill. App. 3d 1, 9-11, 578 N.E.2d 109, 114-16 (1st Dist. 1991), in which the Illinois Appellate Court reversed a conviction after a bench trial because the prosecution did not provide the defendant with notice that an informant was paid by the police despite a discovery request for indications of witness bias. The *Aguilar* court analyzed the case in terms of deciding the appropriate discovery sanctions under state law, *see People v. Vasquez*, 313 Ill. App. 3d 82, 101, 728 N.E.2d 1213, 1227-28 (2d Dist. 2000), not whether the defendant knowingly waived his right to a jury trial. Hence, there is no constitutional analysis of jury waivers in the *Aguilar* decision.

Lynch also cited an Illinois case concerning jury waivers based on the statutory requirements under the Illinois criminal statute, 725 ILCS 5/103-5. *See People v. Dockery*, 296 Ill. App. 3d 271, 275, 694 N.E.2d 599, 602-03 (1st Dist. 1998). Lynch, however, did not present any controlling legal principles regarding his fundamental constitutional right to a jury trial and that a waiver must be made knowingly and intelligently. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 468 (1938) (waiver of a constitutional right must be made competently and intelligently); *Whitehead v. Cowan*, 263 F.3d 708, 732 (7th Cir. 2001) (constitutionally valid waiver of jury trial requires that the defendant have concrete knowledge of the right being waived). Thus, Lynch did not provide the Illinois Appellate Court with the controlling constitutional principles as required. *See Chambers*, 264 F.3d at 737-38.

Although Lynch mentioned in his appellate brief that he did not knowingly waive his right to a jury trial and that the additional impeachment evidence was of critical importance, he did not fully and fairly present his jury waiver claim to the Illinois courts. The mere mention that he did not knowingly waive his jury trial is not enough to overcome the lack of constitutional argument and analysis in his appellate brief on post-conviction review. *Id.* at 738. Accordingly,

Lynch did not fully and fairly present this claim to the Illinois Appellate Court, and thus, it is procedurally defaulted.

The court, however, may consider Lynch's defaulted claim if he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman Thompson*, 501 U.S. 722, 750 (1991). Lynch, however, makes no attempt to overcome this default. Therefore, this court is barred from reviewing the merits of Lynch's jury waiver claim.

## ORDER

Wherefore, the court concludes that Lynch is not entitled to habeas relief. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Date: July 17, 2003